(Cuyahoga Co., Court of Common Pleas.)

JAMES CORRIGAN v. JOHN D. ROCKEFELLER.

---

1. Where a party avers in his pleading what are claimed to be legal conclusions instead of the facts on which such legal conclusions are based, the adverse party may, by motion to make more definite and certain, ask that such facts be set out. But where the adverse party fails to do this and answers by denial of such averments and setting up new matter, this amounts to a waiver of the objections to his adversary's pleading.

2. The "new matter" in the code of Civil Procedure, sec. 5070, includes matter in confession and avoidance, and involves matter extrinsic to the matter set up in plaintiff's petition. Confession and avoidance admit directly or impliedly the truth of the allegations constituting plaintiff's cause of action, but aver other facts which would prevent plaintiff from recovering.

3. Where plaintiff by way of anticipation pleads in his petition matters which otherwise would properly be new matter in confession and avoidance to be plead in the answer, an answer of general de-

nial of such matter is sufficient, and defendant need not plead in addition a confession of facts upon which he has been compelled by the pleading of the plaintiff to enter a denial if the facts are true.

On Demurrer to Answer.

NEFF, J.

In the case of James Corrigan against John D. Rockefeller, a general demurrer to the answer of the defendant has been filed by plaintiff, the demurrer being in this language:

"The plaintiff, James Corrigan, now comes and demurs to the answer of the defendant, John D. Rockefeller, and for cause of demurrer shows that said answer does not state facts sufficient to constitute a defense."

The petition in the action is very voluminous, but perhaps it would not be amiss to give a very brief resume of its contents, in order to afford a setting for what I shall deem is necessary to say in the disposition of this demurrer.

Plaintiff alleges that the Standard Oil Trust is an unincorporated trust or association consisting of numerous persons and corporations; that it was organized in the year 1882, and for several years last past has had and now has a capital of one hundred million dollars divided into one million shares of one hundred dollars each; that ever since its organization it has been and still is in the exclusive control and management of a board of trustees of which the defendant is one, he being also the president of said board of trustees; that the ownership of all the property of said Standard Oil Trust is represented by one million shares of trust certificates, and that by the organization of said Standard Oil Trust and the issue, sale and disposal of such trust certificates an express trust relation was created between the defendant and his associate trustees on the one side, and the holders and owners of said one million shares of certificates on the other; that besides the trust relation so created, the defendant has been the special agent and trustee of the plaintiff in regard to two thousand five hundred shares of said Standard Oil Trust certificates owned by the plaintiff, he having at defendant's request from time to time given him his power of attorney or proxy to vote for and represent him at all the meetings of the shareholders of said Standard Oil Trust: that for some time prior to March 14, 1895, the plaintiff was indebted to the defendant for sundry large sums of money loaned him by the defendant and was also contingently liable to him in sundry other obligations, for all of which indebtedness the said defendant held the said two thousand five hundred shares of certificates in pledge as collateral security; that on or bout the 14th day of March, 1895, the laintiff was induced by sundry cunning tricks, frauds and misrepresentations of said defendant to enter into a contract in writing with him for the sale of said two thousand five hundred certificates to him, of the tenor and substantially of the words following.

Now follows a copy of the agreement entered into on that date between the parties to this action, containing numerous recitals of various transactions that had taken place and were pending between the parties to the contract, and, among other things, containing this recital:

"Mr. Corrigan will immediately sell, and does hereby sell and assign absolutely to Mr. Rockefeller the said 2,500 shares of Standard Oil Trust certificates, for the sum of $420,000.00, the proceeds of sale to be held and disposed of as hereinafter provided."

Perhaps that is the clause of the agreement that is germane to the questions raised by this demurrer, although as I say, the recitals of the agreement are numerous, and contain reference to other matters.

Plaintiff avers further "that for some time prior to the date of said contract the defendant schemed and planned to obtain from plaintiff the legal title and ownership of said 2,500 shares of said Standard Oil Trust certificates, which he held as collateral security as aforesaid; that to better carry out and accomplish his said plan, he professed great friendship for the plaintiff, who was then, as he well knew, very greatly embarrassed and in need of money by reason of very heavy losses then recently sustained in his business of which the defendant had full knowledge;" that the defendant at numerous times pressed the plaintiff for the payment of such indebtedness; that the plaintiff, fearing a forced sale of the certificates, made arrangements to borrow from others the amount of money required to take up said indebtedness to the defendant, and so notified the defendant, and sought to get from the defendant such information touching the property, liabilities and business of the Standard Oil Trust as would enable the plaintiff intelligently to estimate its value; that for the purpose of obtaining such information he addressed sundry letters by his attorney Stevenson Burke, to the defendant, to which the defendant made no reply. The letters are set out in extenso; they are unnecessary, however, to read, because they are recitals of facts, and go with the request or requests for such information. And the petition further states that the defendant refused to give such information, refused to give any information touching their value, for the distinct purpose of keeping the plaintiff in ignorance of the real value of the certificates in question, and for the purpose of defrauding and over-reaching the plaintiff, and obtaining

said two thousand five hundred shares of certificates at less than their value, defendant concealed from the plaintiff the true state of the condition of the Standard Oil Trust and made false assertions in reference thereto: that in that behalf he represented that the competition in the business was very great, so great indeed that the certificates had largely depreciated in value; that the defendant stated that $168.00 per share was a full and fair price for such certificates and they were in fact not worth over $125.00 per share, whereas in truth and in fact they were then and there worth $500.00 per share, as defendant well knew.

That all of such representations were made with the distinct purpose of inducing the plaintiff to part with his title to such shares, and by reason of such misrepresentations and by such refusal to reveal the condition of the affairs of the trust and the value of its property, that the defendant fraudulently, in breach of his obligations as trustee of the plaintiff, obtained the transfer of the title to these trust certificates.

There are numerous averments as to the duty of the defendant; that is, such duties as arose out of his relation as trustee.

And it is alleged that soon after the execution of the contract above referred to, on the 14th of March, 1895, the plaintiff beginning to suspect that he had been over-reached, addressed sundry letters to the defendant imploring to give such information as had theretofore been sought; but to no avail, defendant still refusing to make any disclosures.

The plaintiff prays that the contract aforesaid of March 14, 1895, and the sale thereby attempted to be made of said two thousand five hundred shares of certificates to the defendant may be annulled, set aside and held for nothing; that a true account may be taken of the amount of dividends received by the defendant upon said shares, and of the indebtedness of the plaintiff to the defendant upon the obligations specified in said contract; that if the said defendant has not caused said shares to be transferred to his name upon the books of said trust, that he may be required upon the adjustment and payment of the amount found due to him upon such account, to return said certificates so held by him to the plaintiff; that if he has caused said shares to be registered in his name, he may be required upon the accounting and under the order of the court to turn over to the plaintiff two thousand and five hundred shares of trust certificates of the same character and value, or in default of turning over to the plaintiff two thousand five hundred shares of such certificates, that he may be decreed and ordered by this court to pay to the plaintiff such an amount of money as upon investigation the two thousand five hundred shares of certificates shall on the trial be found to be worth by this court, and that such further and other decrees shall be made in the premises as justice and equity require.

This is in substance the petition of the plaintiff.

Defendant by way of answer says that he admits that the Standard Oil Trust was organized in the year 1882, having now a capital stock of about ninety-seven million dollars, represented by trust certificates of one hundred dollars each; admits the organization of such trust substantially as averred; and says further that during the existence of said trust association this defendant was a member of its board of trustees, and was the president of said board; but this defendant says that on or about the 21st day of March, 1892; the said trust association was dissolved, the agreement hereinbefore referred to abrogated, and liquidating trustees appointed, of whom this defendant was one; and that the liquidating trustees distributed to the holders of trust certificates all property and all surplus, except stocks of corporations, and since said March 21, 1892, this defendant has been acting as one of the liquidating trustees of said trust, for the purpose of receiving such trust certificates as might from time to time be surrendered, and conveying the legal title of the various corporate stocks held by the said trustees in trust to the persons entitled thereto, thus enabling them to obtain on demand from the various corporations issuing said stocks, the certificates of stocks to which they were severally entitled, as well as distributing among the holders of the unsurrendered certificates their proportion of the dividends from time to time received.

He admits that prior to March 21, 1892, he had, jointly with others, at various times, held the proxy of the plaintiff and voted on his certificates. He admits the execution and delivery of a certain agreement set out in plaintiff's petition; avers that the contract was carried out on his part in accordance with its terms and stipulations; and he makes as to other matters not directly appurtenant to this demurrer, certain averments that he still holds the sum of one hundred and forty four thousand two hundred and thirty six and ninety one-hundreths dollars ($144,236.90), together with the vessel mortgage of one hundred and forty thousand dollars ($140,000.00) as security for the indebtedness of the plaintiff.

These last averments, however, are not material to the question presented here.

The defendant further admits that he received various letters from Stevenson Burke and from the plaintiff, some of which in full, and portions of others of which are set out in the petition, and that to some of them he made no reply. He further admits that prior to the execution of said contract, and after the pledging of said stock with him as collateral, he received a portion of the dividends accruing thereon; but says that all dividends so received by him were credited upon said indebtedness and accounted for as a part or all of the sum received by him, mentioned in said contract, and were taken into account in the liquidation of the amount

of the said indebtedness of that date; but the defendant denies each and every other averment in said petition contained, and prays to be hence dismissed with his costs.

Plaintiff's first contention with reference to this demurrer is, in support of the demurrer, that the averments of the petition, especially when coupled with such admissions as are contained in the answer, affirmatively show that the relation of trustee and cestui que trust subsisted between the parties to this action, with reference to the Standard Trust certificates in question.

Resisting this contention, defendant urges that the averments of plaintiff's petition are averments in this respect, of mere legal conclusions, are not statements of operative or primary facts, and that, therefore, such averments do not allege issuable facts; that plaintiff's petition is defective in this respect, and that inasmuch as a demurrer searches the whole record, judgment on the demurrer should go against the plaintiff as his was the first defective pleading.

It is true that in large part the averments of the petition are mere characterizations of the defendant as trustee; but they are so inter-tissued with other allegations of primary facts that they can not be said to stand alone as averments of mere legal conclusions. Besides this, defendant, instead of moving the court to require the plaintiff to make his petition more definite and certain in this respect by stating fully and clearly the facts from which such relation of trustee was claimed to have arisen, elected to answer over and take issue with plaintiff by denial of such averments, coupled with affirmative allegations or admissions in the answer tending to impress the defendant with the character of a trustee in relation to the certificates in question.

I am inclined to think that this was a distinct waiver of such defective allegations in the petition, but I call attention very briefly to the language of our supreme court in the case of Chamberlain v. The Painesville & Hudson Railroad Company, 15 Ohio St., 225, to the sixth branch of the syllabus:

"Where a defendant, by way of defense to a note, pleads in general terms, that it is wholly without consideration and void, and the plaintiff, without requiring a statement of the facts on which the defense is based, joins issue, any evidence is admissible, on the trial, which tends to impeach or sustain the consideration."

And the court, in the course of its opinion, says:

"It may be remarked, however, that so far as the evidence may have been deemed inadmissible on the ground of not conforming to the allegations in the pleadings, the objection should have been made when the evidence was offered, or at least, before the close of the testimony, so that, the objection might have been obviated by amendment, if remediable in that way. But in this case the defendant has set up as his second defense, in general terms, that the note was wholly without consideration and void. This the plaintiff might have required to be made more definite, by a statement of the facts upon which the defense was based; but he waived this right and joined issue."

In 8th Ohio State, at page 298, in the case of Trustees of School Section 16, etc., v. Odlin, our supreme court says:

"If what, under common-law pleadings, was denominated a legal deduction or conclusion of law, is alleged, it may or may not contain also a fact constituting a cause of action or defense; but if it does, and is indefinite and uncertain, the opposite party may, by motion, require it to be made definite by motion. He cannot demur, as at common law, nor object to the pleadings on error. There may be mere abstract propositions or conclusions of law which contain no fact whatever. It is enough, however, for the present case, to say that the deduction or conclusion of law in the answer in this case, construed as ordinary language, does, in an indefinite manner, which the other party did not object to, put in issue the fact whether there was any valid appraisement made. The plaintiff having proceeded to trial, waived objections to its indefiniteness."

The same doctrine is announced substantially in the 6th Ohio State, 380. There is also a case in 1 Cleveland Reporter, at page 210, which, however, I deem it unnecessary to refer to.

In addition to this, it may be said that some of the admissions of defendant's answer would seem to support plaintiff's contention in this respect, in which there are recitals, that the defendant was a liquidating trustee, and that the liquidating trustees held the surplus for distribution, etc. I say some of those admissions would tend to give color to the contention of the plaintiff that the defendant was in fact a trustee.

Assuming, then, that the allegations of plaintiff's petition are such as, when construed in connection with the answer, to impress the defendant with the character of trustee, the second contention of the plaintiff in support of the demurrer, is that a contract of purchase by a trustee from his cestui que trust is void at the election of the cestui que trust, citing section 958 of Pomeroy's Equity Jurisprudence; also sections 194, 195, 196 and 197 of Perry on Trusts; also the case of Van Epps v. Van Epps, reported in 3 Paige, 237, Lawyer's Edition of N. Y. Chancery Reports, Vol. 4.

These text writers, together with these adjudications, support the contention of the plaintiff in this respect, if, indeed, there be any dispute upon this proposition and I imagine that there is none, because the doctrine finds abundant confirmation in our own Supreme Court decision reported in 32 Ohio St., 539, Cox v. Johnson.

It is next contended by plaintiff, that the burden is on the purchaser to show—that is, where the relation of trustee and cestui que trust is shown to subsist, the burden is no

the purchaser or the trustee, to show the validity of the purchase, and he must prove the facts which validate such purchase.

And in support of this contention he cites Perry on Trusts, section 195; Meachem on Agency, section 466. Pomeroy on Equity Jurisprudence, section 958; and they, afford in my judgment, support for the contention of the plaintiff in this respect.

The next contention or claim of the plaintiff is that the defendant must plead the facts which take the transaction out of the general rule, and show it to be valid.

This brings us to the most interesting and by far the most important question raised by the demurrer.

The petition, with great elaboration and circumstantiality, sets up defendant's breach of duty, averring such breach of duty in every conceivable respect, commissive as well as omissive, coupling therewith affirmative declarations of actual fraud, deceit, dissimulation and misrepresentation. These allegations are denied generally. Plaintiff insists that denial is not enough; that defendant should, in addition to denial, set out affirmatively all of the facts by which he seeks to avoid the presumption that the purchase of the certificates in question is void or voidable at the election of the cestui que trust.

On the other hand, the defendant claims that plaintiff having elected to charge in his petition a breach of duty in all of these respects, it is enough to deny such averments; that such denial makes a good issue; that the issue is as complete as if after denial the defendant had pleaded all such facts in avoidance as would tend to rebut the presumption.

The contention of the parties may be appropriately illustrated by the case of Miller v. Miller, as reported in the 16th Ohio State, 528, and singularly enough this case is relied upon as authority by both sides in this case. So it becomes necessary to examine this case somewhat in detail, at least so far as it is necessary to understand it and apply its principles to the case at bar.

"December 11, 1862, Sarah Miller filed her petition in the court of common pleas of Wayne county, against John Garver, as executor of John Miller, deceased, stating in substance that John Miller died September 17, 1860, leaving her his widow: that the nuncupative will of the deceased was duly proved and admitted to record, in the probate court of Wayne county, September 21, 1850, and that Garver, the executor, duly qualified and entered upon the duties of the trust; that on February 6, 1861, he filed his account in the probate court for final settlement of the estate; and that in pursuance of due notice, the court audited the account, and found in the executor's hands, after paying all debts, costs and charges of administration, $5,816.32, which the court ordered him to distribute according to law; that the testator died, leaving two children, Martin and Mary, his heirs at law;

that plaintiff is entitled, as widow, to a distributive share of the $5,816.32, to-wit: one-half of the first four hundred, and one-third of the residue, being in all $2,005.44, and that sum is justly due her from the executor, with interest from March 12, 1861; that on June 14, 1862, she presented her account for her share to the executor, for his acceptance and payment, that he refused to accept or pay. Wherefore she asks judgment against him for the amount claimed, and interest.

"The executor demurred to the petition on the grounds: That it does not state facts sufficient to constitute a cause of action; and 2, that it shows the plaintiff had no right to recover.

"The demurrer was overruled and the executor answered."

The second answer is in this language.

"That on or about November 18, 1856, said Johnson Miller and the plaintiff, then his wife, having agreed to separate, the two made a verbal agreement—he to pay her $700.00; she, in consideration thereof, to release and relinquish all claim she then had or might have to his money or personal estate, and all claims as a distributee of his estate, in case she survived him; that in pursuance of this agreement, Miller paid his wife the $700.00, and she received it as her full share of his real and personal estate."

The plaintiff demurred to the second defense set up in the answer, and the court sustained the demurrer. Error was prosecuted to the action of the court sustaining that demurrer. Judge Brinkerhoff, on page 532, in delivering the opinion, says this:— "But in respect to contracts," after having stated that contracts of that sort were legal or valid in Ohio—"But in respect to contracts of this, and of a kindred kind, equity is properly somewhat jealous of the influence which is commonly in the power of the husband to exert in their procurement, however that influence may arise—whether from her lingering fondness and habitual deference, the restraint of his presence, his superior knowledge of business and values, or his powers of coercion and annoyance. Hence it is an essential element of the proposition above stated, that the terms of the contract in favor of the wife shall be fair, reasonable, and just to her, in view of all the circumstances of the case and of the parties at the time the contract is made. If the contract be relied on in the pleading, either as a cause of action or as a matter of defense, the pleading must contain averments which show the contract to have been fair, reasonable, and just to her under the then existing circumstances. If it becomes a question of fraud, the proof must lead the mind of the chancellor satisfactorily to the same conclusion. It is not sufficient, either as a matter of pleading or of proof, to set up the naked contract and its execution by the husband. In addition to this, facts must be averred, or proved, or both"—"and both" would probably be a better expression,

because the logic of the decision would imply "and both"—so the exigencies of the case may require showing that the terms of the contract in favor of the wife were fair, reasonable and equitable under the circumstances of the parties at the time it was made. And this doctrine runs through all the cases bearing on the subject.

And because the defendant in that action failed to aver that the contract was fair, reasonable, and just, the court below sustained the demurrer to the defense, and the supreme court affirmed, that judgment sustaining the demurrer. This case is cited by the plaintiff and claimed as a distinct authority in support of plaintiff's contention in this respect. It is a case relied upon with equal confidence and assurance upon their part, by the defendant's counsel; and they say this— that the defense set up by the second branch of the answer in this case merely recited the making of the agreement, without coupling with it any averments as to the reasonableness or justice. Now, the defendant says, suppose that plaintiff, in addition to averring that she was the widow, and that the defendant was the administrator of the decedent, and that there was certain chattel property to which, under the statute, she was entitled, suppose instead of that she had pleaded the agreement, had set up that on a certain date she entered into a contract of settlement with her husband whereby, in consideration of the receipt by her of $700.00, she agreed to relinquish all her claim to his estate; suppose then that she had averred that that contract was unfair, unreasonable and unjust in its provisions, and had prayed the court to set it aside? Now, the defendant says that if the defendant in that case had simply gone on and denied—first had admitted the making of the contract, and had denied that it was unfair, unreasonable and unjust, that the issue would have been made.

And so I say this illustrates the most interesting and important question presented by the demurrer in this case, and the question turns upon the proper construction to be given to section 5070 of the Code, which defines what the answer must contain:

"Sec. 5070 The answer shall contain

"1. A general or specific denial of each material allegation of the petition controverted by the defendant.

"2 A statement of any new matter constituting a defense, counter-claim or set off, in ordinary and precise language."

The code-makers innovated upon the common law pleading by inserting the words "counter-claim or set-off."

That is a statement now of any new matter constituting a defense.

This section governs pleadings, both in equity and at law. The application of this section to the case at bar requires the ascertainment of what is implied by the words "new matter constituting a defense."

They manifestly imply something not embraced under the first subdivision, relating to denials, general and specific.

Nothing can be new matter within the meaning of this section which amounts to a mere traverse of the averments of the plaintiff's petition. New matter must, by the most inexorable necessity of logic, be something additional to what would be the subject of a traverse.

What is this something additional to the subject of traverse or denial which is introduced in our code? It is simply confession and avoidance as understood at common law. It must be in the nature of confession, otherwise subdivision No. 2 would not and could not be differentiated from subdivision No. 1 relating to denials. By the same logical necessity, the term "new matter" must include matter in avoidance, else confession without avoidance would constitute no defense, and would ex vi termini entitle plaintiff to judgment on the pleadings.

At common law, a pleading was either in the nature of a traverse, or of a confession and avoidance. An elementary proposition at common law was that confession and avoidance must give color.

In 1st Chitty's Pleadings, edition of 1840, side paging 527, the marginal heading if I may call it so, being in this language, "of giving color"; "An important rule of pleading is deducible from the principle that a plea in bar must traverse, or confess and avoid, the matter to which it is applied; namely, that a plea in confession and avoidance must give color. And on this rule chiefly depends the doctrine that a special plea, not pleaded as a general issue, but which is so in effect, will be defective.

"It is plain that a plea which shows new matter in avoidance or discharge of the plaintiff's allegations, is double and argumentative if it does not admit the apparent truth of the allegations as matters of fact. There can be no occasion to adduce grounds for defeating the operation of disputed facts. The plea in avoidance must, therefore, give color to the plaintiff, that is, must give him credit for having an apparent or prima facie right of action, independently of the matter disclosed in the plea to destroy it."

On the same subject, Stephen, in his work on Pleading, on page 198, after, having gone very exhaustively into the discussion as to the various forms of traverse, general and special, under section 2, says:

"The doctrine of traverse is being now discussed, the next subject for consideration is

"2. The nature and properties of pleadings in confession and avoidance."

· "With respect to the quality of these pleadings,"—"quality" being in italics and therefore the crucial word—"With respect to the quality of these pleadings it is to be observed that it is of their essence (as the name itself imports) to confess the truth of the allegation which they propose to answer or avoid. It was formerly the practice in many cases to frame such pleas with a formal confession or admission in terms, using the introductory phrase of true it is, that, etc., and then proceeding to plead in answer to the matter thus explicitly admitted. But this method is not required by the rules of pleading, and, with a view to brevity, is not generally abandoned."

On page 200, Stephen say this: "It is not necessary, however, that a pleading in confession and avoidance should admit the truth of the adverse statement absolutely and to all purposes. The extent and nature of the admission required, is defined by the following rule—that pleadings in confession and avoidance should give color. Color is a term of the ancient rhetoricians, and was adopted at an early period into the language of pleading. It signifies an apparent or prima facie right; and the meaning of the rule that pleading in confession and avoidance should give color, is that they should confess the matter adversely alleged, to such an extent at least, as to admit some apparent right in the opposite party, which requires to be encountered and avoided by the allegations of the new matter."

On page 218: "Such are the doctrines involved in the general rule, that the party must either demur, or plead by way of traverse, or by way of confession and avoidance. It remains, however, to notice certain exceptions to which that branch of the rule is subject, which relates to pleadings; and which requires a party to plead either by way of traverse, or by way of confession and avoidance.

"First, there is an exception in the case of dilatory pleas; for a plea of this kind merely opposes a matter of form to the declaration, and (as will appear on examination of the examples in the first chapter) does not tend either to deny or to confess its allegations. But replications and subsequent pleadings, following on dilatory pleas, are not within this exception.

"Again, the rule is not applicable to the case of pleadings in estoppel."

These are the only exceptions cited by Stephen.

It is clear that at the common law, whatever was not in the nature of a traverse, was in the nature of confession and avoidance, except dilatory pleas and pleas in estoppel.

The question then arises, did the makers of the code intend to embrace within the meaning of the words "new matter" anything additional ·to confession and avoidance as understood at common law, leaving out the exception of counterclaim and set-off as embodied in this section—omitting them from consideration.

The code-makers were in the nature of things limited by the inexorable rule of logic which prescribes that whatever in an answer does not deny must of necessity confess, or, as Chitty has it, give color to the averments of the petition. And this statement is equally applicable to pleadings under the code, as shown by the code commentators.

The first of these which I quote is Pomeroy on Remedies and Remedial Rights, section 691, which is as follows, that is, such portion as I shall read:

"Sec. 691. The overwhelming weight of judicial opinion has with almost complete unanimity agreed upon the principle which distinguishes denials from new matter, and determines the office and function of each. The general denial puts in issue all the material averments of the complaint or petition, and permits the defendant to prove any and all facts which tend to negative those averments, or some one or more of them. Whatever fact, if proved, would thus tend to contradict some allegation of the plaintiff's first pleading, but would tend to establish some circumstance, transaction, or conclusion of fact, not inconsistent with the truth of all those allegations, is new matter. It is said to be 'new,' because it is not embraced within the statements of fact made by the plaintiff; it exists outside of the narrative which he has given; and proving it to be true, does not disprove a single averment of fact in the complaint or petition, but merely prevents or destroys the legal conclusion as to the plaintiff's rights and the defendant's duties which would otherwise have resulted from all those averments admitted or proved to be true. Such is the nature of the new matter which cannot be presented by means of a denial, but must be specially pleaded, so that the plaintiff may be informed of its existence and of the use to be made of it by the defendant. Whether it is 'new' in the sense described, must of necessity depend, and depend alone, upon the nature, extent, variety of the material allegations which the plaintiff inserts in his pleading."

"Sec. 692. It follows from the foregoing discussion, that considering the office and function of the general denial, and the distinction between it and new matter, the latter confesses and avoids, all the material allegations of the complaint or petition; that is, it admits all be material facts averred therein, and avoids their legal result by means of the additional facts which are relied upon as constituting the defense. A particular defense may, therefore, when set up in

answer to one complaint, be new matter, and require to be pleaded; the same kind of defense, when set up in answer to another complaint, may not be new matter, but may be proved under the general denial without being specially pleaded. Undoubtedly the defense of payment in its various phases is the one which most frequently assumes this double aspect."

Also, in section 670, quoting but two sentences:

"It is impossible to say of any class of cases, that such or such evidence can or cannot be offered as a matter of certain rule, or that such or such a defense can or cannot be set up. As the plaintiff is bound by no inflexible rule as to the form of his pleading, and as to the averments he may choose to introduce into it, so he can widen or contract within distant extremes, the extent and nature of the evidence and defenses which may be interposed by the defendant under a denial."

On this subject, Maxwell, in his work on Code Pleading, page 395, uses this language:

"Confession and Avoidance. New matter. In Chitty on Pleading it is said," quoting, what I have already read, but I will read it, "'The plea in avoidance must therefore give color to the plaintiff, that is, must give him credit for having an apparent or prima facie right of action, independently of the matter disclosed in the plea, to destroy it. And the code has not changed the general rule that the defense of new matter which avoids the facts stated in the petition, admits the apparent right to the plaintiff. The confession is only implied from the nature of the defense, and is not necessarily an absolute one."

In 37 Iowa, 359, Morgan et al. v. Insurance Company.

"Pleading: Confession and avoidance." —I now read the syllabus—"While if new matter is pleaded in avoidance, there should be in the same count a confession that, but for such new matter the action could be maintained, yet such confession may be by implication as well as directly."

The court in its opinion, Beck, Ch. J., rendering it, says: "If new matter is pleaded in avoidance, there should be, in the same count, either directly or by implication, a confession that, but for such new matter, the action could be maintained. In our opinion the counts demurred to, each by implication clearly admit that, but for the defenses therein separately pleaded, the action could be miantained."

Bliss, in his work on Code Pleading, section 340, says:

"Matter of Defense gives color. In ordinary actions, it is difficult to see how one can allege new facts showing a non-liability that do not suppose the existence of a liability but for such facts; hence

the term 'new matter in confession and avoidance,' so generally applied to special defenses. Thus, if, to an action upon contract, one sets up infancy, coverture, release, fraud, etc., he seems to admit the contract in avoiding its obligation. So, in trespass for an assault, etc., a justification by warrant admits the assault. This is called giving color; and, says Chitty, 'the plea in avoidance must, therefore, give color to the plaintiff—that is, must give him credit for having an apparent, or prima facie, right or action independently of the matter disclosed in the plea to destroy it.' The books upon common-law pleading make various distinctions in regard to color."

The next section, 341, states that the nature of the admission may be implied simply; that is, the admission may be implied as well as couched in distinct terms.

Phillips in his work on Code Pleadings, section 235, uses this language:

"The defense of denial, whether general or special, does not allege any fact; it simply denies facts alleged in the complaint, and rests the contention upon the allegations so traversed. The defense of new matter, on the other hand, does not deny any fact; without controverting any averment of the complaint, it asserts other facts which show that notwithstanding the facts stated in the complaint, the plaintiff has not a right of action against the defendant. It proceeds on the tacit admission that the issuable facts stated in the complaint are true. This is called 'giving color,' which is a prerequisite justification for introducing the new matter, and is a logical concomitant of this defense."

In the subsequent section, that is section 236, he discusses the philosophy of the defense of new matter, limiting it in all cases to such averments as to give color.

Boone, in his work on Code Pleading, at section 59—I quote this because while the doctrine is substantially the same, yet the phraseology varies in some respects, and in certain respects it may become material as we get farther on:

"Under the Code system, only two classes of defense are allowed—the first consisting of a simple denial, and the second of the allegation of new affirmative matter. The answer should either take issue directly on the material allegations of the complaint, or, confessing them, should state distinctly and positively new matter sufficient to avoid them."

And in section 66, I find: "Pleading New Matter in Defense.—New matter is that which admits and avoids the cause of action set up in the complaint or petition, and constitutes a defense thereto." Mark the words. "cause of action." "Whatever admits that a cause of action, as stated, once existed, but at the same time avoids it, that is, shows that it has ceased to exist, is new matter. Such are

release, accord and satisfaction, payment, leave and license, discharge in bankruptcy, to act of God," etc.

On this subject there are three cases reported in 21 California, the first of which is the case of Coles v. Soulsby, 21 Cal., title paging 47. I read now from the third branch of the syllabus: "New matter must be specially pleaded; and whatever admits that the cause of action, as stated in the complaint, once existed, but at the same time avoids it—that is, shows that it has ceased to exist— is new matter."

In the opinion the court say: "New matter must be specially pleaded; and whatever admits that the cause of action as stated in the complaint, once existed"—this is in the same language as Phillips—"but at the same time avoids it—that is, shows that it has ceased to exist—is new matter, it is that matter which the defendant must affirmatively established. Such are release, accord and satisfaction. Defenses of this character must be distinctly set up in the answer."

Also on page 71 of this same report, 21 Cal., the case of Frisch v. Caler, the court used this language, and it affords a very distinct predicate for much of the comment of Mr. Pomeroy in the first section which I read from:

"Whether matter is new or not must be determined by the matter itself, and not by the form in which it is pleaded; the test being whether it operates as a traverse or by way of confession and avoidance. A plea tendering no new issue, but controverting the original cause of action, is a mere traverse"—I call attention to the words "cause of action," because that becomes the pivot on which this case turns—"and as nothing new is involved in it, to call it new matter would be a misapplication of terms. It is not essential to a traverse that it be expressed as negative words—the form of the plea depending upon the allegation it is intended to meet: a negative allegation requiring an affirmative plea and vice versa. Now matter involves of necessity a new issue, or the introduction of a new ingredient as the basis of one, and a new issue can only arise upon the plea in confession and avoidance. An averment that a debt has not been paid, followed by a plea of payment, makes up an issue upon the point, and a replication would only amount to a reiteration of the negative already expressed." This view is distinctly upheld in a later case in the same volume, reported on page 436, in which the court embodied that language as a quotation.

In 7 Hun. 482, (N. Y.), the case of Manning, respondent v. Winter, the second branch of the syllabus is in this language:

"New matter, as the phrase issued in section 149 of the code,"—and by examination it appears that section 149 of the code is precisely like ours, ours being taken from it—"New matter, as the phrase is used in section 149 of the code, means matter extrinsic to the matter"—and I call attention to the word extrinsic '—"extrinsic to the matter set up in the complaint, as the basis of the cause of action.

In 18 Iowa, page 241, in the case of Anson v. Dwight, the court say: "The rule obtains under the code, as under the common-law system of pleading, that the answer, or a count thereof, seeking to avoid the cause of action stated in the petition, by new matter, should confess directly or by implication that but for such new matter the action could be maintained." That is from the syllabus. Reading from the decision: "It is true now, as under our former system of pleading, that the answer, or a count thereof, seeking to avoid the cause of action stated in the petition, by new matter, should confess directly or by implication that, but for the new matter of justification, or avoidance, contained in it, the action could be maintained."

I also cite 2 Denio, page 96, Corner v. Johnston et al.: "A plea in confession and avoidance must expressly or impliedly admit that but for the matter of avoidance relied on the action could be maintained." And the court, Bronson, Ch. J., says "Every plea in confession and avoidance must give color, by admitting an apparent or prima facie right in the plaintiff. It must either expressly or impliedly confess that but for the matter of avoidance contained in the plea, the action could be maintained. This plea makes no such confession, and is therefore bad."

That is the general doctrine. It is apparent from the cases and the texts selected from the various commentators on the code, that the term "new matter" includes matter in confession and avoidance, and involves matter extrinsic to the matter set up in plaintiff's petition. Confession and avoidance admits directly or impliedly the truth of the allegations constituting plaintiff's cause of action.

I have frequently called attention as we have gone along, to the words "cause of action." Now, what does that term imply? Mr. Pomeroy, in his work on Remedies and Remedial Rights, section 453, after a discussion occupying well nigh a page, if not more, concludes thus:

"The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong."

In the case at bar the facts constituting the defendant's act of wrong or delict, consist of the fraudulent conceal-

ment or withholding of the state of the property, assets, income and resources of the Standard Oil Trust, together with fraudulent statements relative to the depressed state of the business by reason of competition, and false statements as to the value of the certificate.

The petition avers affirmatively the facts constituting such delict or act of wrong. Defendant denies generally the delict or act or wrong, or the facts upon which it is sought to be made apparent. If defendant should aver the doing by him of all that his duty required him to do, he would not thereby be pleading new matter, that is, new matter extrinsic to the matter contained in the plaintiff's complaint.

Nor could his statement of his affirmative compliance with his duty with respect to disclose, etc., as to the affairs, assets, etc., of the company, be pleaded by way of confession and avoidance. For he denies generally the truth of all of these facts that constitute the act of wrong or delict, which is the essential part of cause of action; he denies that. Now, by the parity of that reasoning which as to the demurrer to the petition admits everything well pleaded, applying by parity or by equality of reasoning that logic to the answer in question, extending to it that indulgence of intendment that the theory of the law necessarily does extend to it, what does it amount to? The denial while pleaded, in effect affirms the falsity of the allegations contained in the petition. Now, can it be possible that, together with what is tantamount to an affirmance of the falsity of the allegations of plaintiff's petition, the necessities of pleading require that in that very same pleading the defendant should also confess and afterward avoid the very facts which under all the intendments of the demurrer, upon the hearing of the demurrer, are conclusively presumed to be true? Now, if the plaintiff had simply pleaded that the defendant was his trustee, and that as such trustee he held these certificates of stock, and that he refused to disclose the facts connected with the affairs of the company, and its assets, its liabilities, its income, and all of those incidents that make up the value of its property, that he had himself elected to treat such transfer and conveyance as void, and that he had demanded from his trustee a re-conveyance of those certificates, then his contention in this respect would undoubtedly be well taken. But instead of doing this he tenders the issue directly upon all these facts by anticipation; that is, as to concealment, as to fraud, as to deceit and misrepresentation.

Now, what recourse is left defendant? The only recourse left to defendant, if such averments are not true, would be a denial. He could not confess and avoid,

if the facts stated in plaintiff's petition are true. He has, therefore, taken the only logical course left open to him. And in this connection I desire to read what is to my mind better stated than I could by possibility state it myself, from a page or two of the defendant's brief. It amplifies what I have already said and enforces it:

"If Mr. Corrigan had simply pleaded that he had obtained certain loans from Mr. Rockefeller, and as collateral thereto had pledged certain securities; that he was ready to pay and take up his indebtedness, and receive back his securities. but that the defendant refused to surrender them, and had thereupon asked for an accounting, he would have made an apparent cause of action. Granted, for purposes of argument, that Mr. Rockefeller, if the allegation of facts showed him to be a trustee, would have been obliged, had he originally set up the contract of purchase, further to aver that he made the purchase upon full disclosure and with the utmost fairness and good faith, with which averments Mr. Corrigan might have taken issue in a reply; it does not follow that his answer as it stands is demurrable, because Mr. Corrigan. not content with the allegation of law that Mr. Rockefeller was an express trustee, goes further, and himself sets forth in his petition the contract of sale of the collaterals in question by himself to Mr. Rockefeller, coupled with averments in various forms that he was induced to enter into the same by cunning and fraudulent representations; that Mr. Rockefeller refused to make full disclosure, but sought to take advantage of and oppress him, seeking by these averments to avoid the effect the contract might otherwise have of defeating his right of recovery. In other words, he has pleaded in his petition the very fact upon which, according to his contention, defendant should reply.

"Under these circumstances, what more can the defendant do than to admit the contract, deny the fraud, deny the failure to disclose, and deny the oppression? His denials thus bring on the record the affirmative and negative of those very facts which the plaintiff claims must be in the record for the purpose of the defendant's defense, the only difference being that the plaintiff by introducing them himself has made it unnecessary for the defendant to do anything but deny. Having denied that there was fraud, how does he enlarge the issue by averring that there was not; having denied that there was any concealment, how could he enlarge the issue by declaring that there was none? Plaintiff, pleading in this form, has simply incurred the ordinary consequence of undertaking to anticipate and negative the defendant's defense, and has left to the defendant the necessity only of admitting the facts which the plaintiff arising out of an

agreement, but denies all other allegations of the complaint."

Again, that a plaintiff may by anticipation plead facts which would be otherwise new matter—and this whole subject is very largely and almost unlimitedly in the control of the plaintiff in shaping his own pleading, that is, that the plaintiff may by anticipation plead facts which would otherwise be new matter in an answer, and thus radically change the natural scope and character of the answer, is recognized by Pomeroy in section 670, which I have already read, and in sections 691 and 692. Now, by way of illustration, take, for instance, the defense of the statute of frauds, in its nature an affirmative defense. It is a defense of new matter. It admits the plaintiff's cause of action; that is, he admits that he once had a cause of action, or might have had one impliedly, but for other facts which are pleaded. Now, this defense of the statute of frauds may be raised by an allegation contained in the answer, or by anticipatory averments in the complaint and a denial in the answer.

And on this subject, the first case cited by counsel for the defendant is the case of Wells v. Monahan. 129 N. Y., 161. The first branch of the sllyabus reads:

"The defense of the statute of frauds cannot be made available in an action unless pleaded as a defense or presented by the averments"—or giving the emphasis where I ought to place it—"presented by the averments of the complaint." From the opinion by Finch, Judge, I read a single sentence:

"So far as the defense in this case rests upon the statute of frauds, it must fail for two reasons. No such defense can be pleaded, and it is not raised by the averments of the complaint, and without one or the other of these conditions, the defense, if existing, cannot be made available." If either of those alternatives exist, then the defense is distinctly, under the logic of that decision, available.

On this same subject is the case of Porter v. Wormser, 94 N. Y.,431. which says:

"The plaintiff further insists that the original contract of purchase was void by the statute of frauds, there being no note or memorandum of the contract signed by him. This ground was not taken in the complaint, and was raised for the first time in the request for findings. The complaint in substance alleges the existence of a contract for the purchase of the bonds, and seeks to avoid the loss charged thereon on the ground of fraud in the inception of the contract, and because the sale under the 'stop order' was made in disregard of the price limited thereon. The general rule is that the defense of the statute of frauds must be pleaded, except where the complaint on its face discloses a case within the statute."

And on this same head is the case of Ridgeway v. Grace, 293, Miscellaneous N.

Y. Reports, the third branch of the syllabus: "If it be objected that the statute is not pleaded, we answer that it is apparent on the face of the complaint that the promise to pay the debt of another was oral and collateral, and so the defense of the statute of frauds is available, though not pleaded." And the opinion says: "If it be true that the statute was not pleaded, we anwser that it was apparent on the complaint that the promise was oral and collateral, and so the defense is available though not pleaded."

Now, recurring again to Pomeroy on Remedies, sec. 691, I read:

"Whether it is 'new' in the sense described, must of necessity depend, and depend alone, upon the nature, extent, and variety of the material allegations which the plaintiff inserts in his pleading. I shall not repeat the observations upon this point contained in the preceding section, and simply remark that the plaintiff may, by making unnecessary, although material averments in his complaint or petition, greatly enlarge the scope of the general denial, and prevent those defensive facts from being in his case new matter, which in another case, and from the operation of a more scientific and correct mode of pleading, would clearly be new matter. The criterion under the code system is not, therefore, in every case, the intrinsic, essential nature of the defense itself proposed by the defendant; it is to be found rather in the frame of the complaint or petition, in the material statements of fact made by the plaintiff therein."

Now, as a practical question it stands thus: Plaintiff by his petition sets up that he was the owner of these shares of trust certificates; that they were pledged to Mr. Rockefeller in such sense or such guise as to constitute Rockefeller in respect of such shares the plaintiff's trustee. Plaintiff alleges that defendant resorted to affirmative concealment of the facts with reference to such property; he made actual misrepresentations as to the extent of competition, as to the value of the property, and that in every conceivable way—in fact, I have proposed to myself in the course of this investigation, some possible allegation that could be super-added to the very plenary and full and complete statement of fraud in this petition; and there are no resources of my imagination that could afford to me any possible addition to the averments of fraud that are contained in the petition of plaintiff. Now, he elects to set up affirmatively all of these misdoings that constitute the act of wrong or delict of the defendant, which, as Pomeroy says, is an essential part of the cause of action. He does that affirmatively. The defendant, while admitting the holding and transfer of the certificates, denies generally all the rest.

Now, as a practical question it stands thus: Suppose that this demurrer should

be sustained, and that, in obedience to the logic of this opinion, the defendant should go on and with equal circumstantiality set out the fact of disclosure, giving the details of such disclosure with the greatest minutiae, and then the plaintiff would come by way of reply and deny. Now, what would we have? We would have an issue as to the disclosure or non-disclosure; we should have the truth of that fact and its denial asserted; that is, the truth of it stated by the defendant and denied by the plaintiff. In other words, we would have the same issue, which is the truth or falsity of these representations touching the failure to disclose, touching the matter of false representation as to competition, and as to the value of the property, if that be a material recommendation, which of course is fatal if it is; it might be material as between the trustee and cestui que trust—we have one side asserting and another denying. There is one issue made as to the truth of the averments, by the petition and the answer; then we have the fact of the averments alleged in the answer and denied in the reply. We have two issues which turn out to be precisely the same issue, one presented by the petition and the other presented by the answer and the reply, both precisely the same, and both raising the question whether Rockefeller did in fact fail to disclose, or in fact make these false representations—did, in fact, commit the various frauds alleged in plaintiff's petition.

Now, on this subject Judge Phillips, in his work on Pleading, if indeed so elementary a proposition should need confirmation by any text which I am very seriously disposed to doubt—Judge Phillips says this in the close of section 386 of his work on Pleadings:

"Uncertainty in the mind of the pleader as to what defensive facts may be proved under a denial, and what must be pleaded in order to be proved has led to the common fault of superadding to the general denial a defense in the form of a defense of new matter, but containing only evidential facts equivalent to a denial, and all of which could be proved under the defense of denial, and sometimes the defensive facts and the denial are commingled in one defense.. Such practice is not only a violation of the plainest principles of pleading; it leads to the greatest uncertainty and confusion, and is in the highest degree reprehensible."

It, therefore, seems to me in the very nature of things, under the second subdivision of section 5070, new matter constituting a defense is and must be by the most inexorable logic, mere matter of confession and avoidance—and it seems to me that the authorities are overwhelming on that subject. If it is mere matter of confession and avoidance, it cannot be possible that where a distinct denial is filed presenting traverse or denial under the code, that then the defendant is held to plead a confession of facts upon which he has been compelled by the pleading of the plaintiff to enter a denial, if the facts be true. And I say, as all intendments are given to the pleading when it is under investigation on demurrer, by the plainest parity of reasoning, so far as the hearing of this demurrer is concerned the assumption is necessarily that those denials are well taken. And that being the assumption, the other assumption arises necessarily, that the averments in the petition are false. So we have, then, the situation, under the second subdivision of the statute, of compelling a party to set up by way of confession and avoidance, facts which he has distinctly made the subject of a denial, and which are distinctly responsive to affirmative allegations in the plaintiff's petition.

It seems to me that, whether tried by reference to the authorities, text writers or cases, or whether tested by the more reliable rules of natural logic, the position of the demurrer is untenable; and the demurrer will, therefore, be overruled.